# EXHIBIT 1

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

12/20/2024 12:37:55 PM

Clerk of the Superior Court
By M. Guyot           ,Deputy Clerk

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the putative class

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MATHWORKS, INC., a Delaware corporation, d/b/a MATHWORKS.COM,<br><br>Defendant. | Case No. 24CU029715C<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** |

**CLASS ACTION COMPLAINT**

# I. INTRODUCTION

Californians increasingly conduct their lives and activities over the Internet, sharing often sensitive personal information with companies by using company websites rather than landline telephones.

Defendant created its own online presence at mathworks.com (the "Website") to communicate with potential customers, encouraging engagement with this electronic medium – Defendant's Website -- as an alternative to the telephonic or in-person interaction. Defendant did this to enable potential customers to obtain information from and about Defendant's products, and to enable Defendant to elicit information from potential customers about their specific needs and desires.

Defendant well understands that its Website is a means to communicate privately with potential customers – a consumer expectation that is not only reasonable, but actively nurtured by Defendant. Indeed, Defendant assures visitors that they "take your privacy seriously." See www.mathworks.com/company/aboutus/policies_statements.html (last accessed December 2024).

Defendant's promise is false. In reality, Defendant secretly allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature on the Website. The spyware company then exploits and monetizes that data in violation of the second clause of section 631(a) of the Penal Code.

Dozens of state and federal courts have held that substantially identical conduct violates the California Invasion of Privacy Act ("CIPA").

# II. JURISDICTION AND VENUE

1. As a Court of general jurisdiction, This Court has jurisdiction over all matters presented to it per the mandates of the California Constitution.

2. Venue is proper in this County in accordance with California Code of Civil Procedure Section 394(b) because "none of the defendants reside in the state." As such, venue is proper "in any county that the plaintiff may designate in his or her complaint."

3. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is

not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national Website sales to Californians, such that the Website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its Website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020), *review denied*, No. S264780 (Dec. 9, 2020).

### III. PARTIES

4. Plaintiff is a resident and citizen of California. While physically within California within the statute of limitations period, Plaintiff visited Defendant's Website and conducted a brief conversation through the Website's chat feature, sharing personal information in the process. Plaintiff was not advised that the chat was monitored, intercepted, or recorded.

5. Defendant is a company that sells mathematical computing and engineering software via its website. Defendant also owns, operates, and controls the above website.

### IV. FACTUAL ALLEGATIONS

**Background of CIPA**

6. CIPA prohibits wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]" *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device"). "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]" *Javier*, 2023 WL 114225, at *6.

7. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.

8.      Unlike most companies, Defendant ignores CIPA.  Instead, Defendant enables and allows a third party that has no corporate affiliation with Defendant to eavesdrop on all such conversations. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service….At your fingertips, you have valuable customer insight to make informed business decisions. . . .When people are chatting, you have direct access to their exact pain points….*"). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited December 2024) (emphasis added).

9.      Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate, reasonable expectations of consumers.

**Defendant Pays A Third Party to Intercept Chats During Transmission.**

10.     To enable the eavesdropping, Defendant secretly pays a third party company called "Salesforce" to embed its chat technology code into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed through Salesforce's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.

11.     Salesforce's product is a type of automatic routing software that automatically acquires and transmits user chat communications without any active input from either Defendant's employees, agents, or human representatives.  Salesforce acquires Website visitors' chat communications by first having its software route them to Salesforce's own computer servers that it owns, controls, and maintains.  The secret code enables and allows Salesforce to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they think they are having with Defendant, even when such conversations are private and contain personally identifiable information ("PII") – as Plaintiff did. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

12.     At the time of Plaintiff's visit to the Website, the chat widget on the Website did not disclose that chats are conducted and surveilled by Salesforce.

13.     As shown by the below screenshot, Visitor PII and a tracking ID are sent to Salesforce servers via a websocket connection:



14. Likewise, as shown by the below screenshot, chat transcripts are routed through Salesforce servers:

15. One might reasonably wonder why Salesforce would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website. There reason is money: Salesforce's software is used to gather and analyze customer data for targeted marketing campaigns. Both Defendant and Salesforce profit from secretly exploiting the chat data through targeted social media advertising because "Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers

respond to advertising and engage with the brand….." *See* https://www.adroll.com/blog/what-is-targetedadvertising (last visited December 2024).

16. Salesforce does more than merely provide a storage function for Website users' chat communications with Defendant. It is more than the proverbial "tape-recorder" in the hand of Defendant. Instead, Salesforce uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers – indeed, that is why Defendant pays Salesforce for its software. Salesforce is capable of using, and does use, the intercepted chat communications for its own purposes beyond simply supplying such communications back to Defendant.

17. Salesforce's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature on Defendant's Website in real time makes it a third-party interceptor and eavesdropper known to and enabled by Defendant under CIPA, rather than a mere extension or tool of Defendant and/or party to the communication with Website visitors.

18. Within the statute of limitations period, Plaintiff visited Defendant's Website. Plaintiff – like all visitors – shared personal data and personally identifying information with Defendant via the Website chat feature.

19. Defendant did not inform Plaintiff that Defendant was secretly aiding, agreeing with, employing, or conspiring with Salesforce to intercept and eavesdrop on the conversations during transmission.

20. Defendant did not obtain Plaintiff's effective consent for the preceding intrusions, nor did Plaintiff know at the time of the conversation of Defendant's conduct.

## V.     CLASS ALLEGATIONS

21. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> All persons who communicated with Defendant using the chat feature on Defendant's Website while physically located in the United States within the statute of limitations period.

22. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least 50. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

23. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a. Whether Defendant allowed Salesforce to intercept and utilize transcripts of communications with class members;

    b. Whether Defendant obtain effective and informed consent to do so;

    c. Whether Plaintiff and Class Members are entitled to statutory penalties; and

    d. Whether Class Members are entitled to injunctive relief.

24. TYPICALITY: As a person who conducted a chat with Defendant, Plaintiff is asserting claims that are typical of the Class.

25. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

26. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**CAL. PENAL CODE § 631**

27.     Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section".  Here, Defendant's third party chat provider violated the second clause of section 631(a) of the Penal Code, and Defendant violates the fourth clause or prong because it "aids, agrees with, employs, or conspires with" the Website's third party chat provider to allow such chat provider to intercept, eavesdrop upon, learn, share, and monetize the contents of Defendant's chat conversations.

28.     Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiffs' communications with Defendant's Website.  "Though written in terms of wiretapping, Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'  *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

29.     The spyware embedded into the chat feature of Defendant's Website to record and eavesdrop upon Plaintiff's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

30.     At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Defendant's Website to be intercepted during transmission and recorded.  Defendant also

aided, agreed with, employed, or conspired with Salesforce to eavesdrop upon such conversations during transmission and in real time.

31. Plaintiff sent a pre-filing demand letter notifying Defendant regarding the combined wrongdoing of both Defendant and Salesforce, but Defendant did not respond by taking remedial action to eliminate the wrongful conduct. At minimum, Defendant's conduct may be considered intentional because it had been made aware of its wrongdoing and the wrongdoing of its chat provider by the foregoing pre-filing demand letter, but has taken no remedial action to eliminate the wrongdoing. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (Orrick, J.) (citing *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (White, J.) ("At the pleading stage, … interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'") (quoting *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (Freeman, J.))).

32. In numerous materially identical cases, courts have held that the above-described allegations state viable claims for violations of section 631(a) of the Penal Code.

33. Therefore, Plaintiff and class members are entitled to the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the class and making all appropriate class management orders;
2. Statutory damages pursuant to CIPA;
3. Reasonable attorneys' fees and costs; and
4. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: December 20, 2024

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff and the putative class